IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 23, 2002 Session

**STATE OF TENNESSEE v. CLAUDE W. CHEEKS**

**Direct Appeal from the Criminal Court for Hamilton County**
**Nos. 222245, 222283, and 223379      Rebecca J. Stern, Judge**

**No. E2001-00198-CCA-R3-CD**
**July 22, 2002**

JOSEPH M. TIPTON, J., dissenting.

I respectfully dissent from the result reached in the majority opinion. I believe the evidence justifies the convictions. That is, the jury had the right under the evidence to discredit the expert witnesses' opinions to the extent that the appellant could be found guilty of the offenses charged.

Because the burden of proving insanity was on the appellant, I believe the state had only the duty to prove the elements of the offenses charged beyond a reasonable doubt. With the jury rejecting insanity as a defense, our standard of review on appeal should be whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have failed to find that the appellant's criminal insanity at the time of the offense was established by clear and convincing evidence. This is the standard used under the federal statute that requires the appellant to prove insanity by clear and convincing evidence. See State v. Barton, 992 F.2d 66, 68-69 (5th Cir. 1993). In other words, after viewing the evidence in the light most favorable to the prosecution, we should determine whether any rational trier of fact could have a serious or substantial doubt about the correctness of the conclusion, i.e., insanity, to be drawn from the evidence. See State v. Holder, 15 S.W.3d 905, 912 (Tenn. Crim. App. 1999) (defining clear and convincing evidence). In this respect, we should not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state.

Unquestionably, the appellant's experts had support for their opinions that the appellant was unable to appreciate the nature or wrongfulness of his acts. However, I believe substantial evidence exists to raise serious doubts about their conclusions.

Relative to the events in question, evidence exists to show that the appellant assaulted Mr. Newman, took his money bag, and ran away. When chased by Mr. Hines, the appellant stopped, turned to Mr. Hines, and said, "Oh, you want some of this?" He then assaulted Mr. Hines. When Officer Chapin confronted him, the appellant stopped, offering no resistance. When Officer Chapin

asked him why he had committed the crime, the appellant replied, "I was hungry." Standing alone, these facts justify inferences that the appellant was aware of the nature of his conduct, had a motive for it, and knew that others would think it was wrong. From his daring the unarmed Mr. Hines while obeying the armed Officer Chapin, the jury could also infer that the appellant had the ability to weigh his options after assaulting Mr. Newman and running away.

As for the 1998 mental evaluation, Dr. Brown noted that the appellant initially denied knowing why he assaulted Mr. Newman and denied hearing voices. However, the appellant subsequently said that he thought Mr. Newman needed money and that the Lord picked the appellant to intervene in Mr. Newman's life. Dr. Brown said that earlier records for the appellant reflected that he had heard voices apparently telling him to assault people in the past.

As for the 2000 mental evaluation, Dr. Brown determined that the appellant attempted to distort testing on two psychological tests, thereby reflecting malingering. He also acknowledged that it was possible for intentional distortions to occur without detection. However, although he admitted that it was impossible to say for sure that the appellant knew right from wrong at the time of the offenses, he still believed that the appellant was unable to appreciate the wrongfulness of his acts at the time of the assaults. Dr. Mudian stated that the appellant said during the 2000 evaluation that he heard voices telling him that the man (Mr. Newman) had his billfold.

Dr. Brown referred to hearing voices in the context of schizophrenia as "command delusions." To me, this is significant in terms of what does not constitute criminal insanity after the 1995 amendment to the insanity defense statute. Before the amendment, the insanity standard provided that a person was not responsible if as a result of mental disease or defect he or she lacked substantial capacity either to appreciate the wrongfulness of the conduct or to conform the conduct to the requirements of law. See Graham v. State, 547 S.W.2d 531, 543 (Tenn. 1977). However, since the amendment, the fact that mental disease or defect prevented a defendant from conforming conduct to requirements of the law no longer proves that a defendant is criminally insane. Even if we accept as true the appellant's having schizophrenia, I believe that the circumstances surrounding the assaults, the facts shown in the mental evaluations, and the appellant's stated delusions lend themselves more logically to the appellant being unable to conform his conduct to the requirements of the law, not being unaware of the nature or wrongfulness of his acts.

I do not doubt that the appellant suffers from severe mental disorders. However, the Tennessee legislature has chosen not to excuse his conduct because of such a disorder. I would affirm the convictions.


_____
JOSEPH M. TIPTON, JUDGE